# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| TPW MANAGEMENT, LLC, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>YELP INC., )<br>Defendant. ) | Doc. No. 1:15-CV-232-JGM |

## DEFENDANT YELP INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.    Introduction. ............................................................................................................ 1

II.   Relevant Facts. ........................................................................................................ 4

III.  Legal Standard. ....................................................................................................... 7

IV.   Discussion. .............................................................................................................. 8

    A.    TPW Fails To Establish A Likelihood Of Success On The Merits. ................... 8

        1.    TPW's Mark Is Not Entitled To Protection Under The Circumstances Of This Case.. ....................................................................................... 9

        2.    There Is No Likelihood Of Confusion. ................................................. 10

            a.    TPW's Mark Is Not Strong. ...................................................... 12

            b.    TPW's Mark And Yelp's Tagline Are Not Legally Similar.... 13

            c.    TPW's Mark And Yelp's Tagline Are Not Used In Proximity To Each Other. ..................................................................... 15

            d.    TPW Offers No Evidence Suggesting It Will "Bridge The Gap." ......................................................................................... 18

            e.    TPW Offers No Evidence Of Actual Confusion. ...................... 20

            f.    TPW's And Yelp's Consumers Are Sophisticated. .................. 20

            g.    TPW Offers No Evidence Of Bad Faith. ................................... 22

            h.    Yelp's Service Is High Quality. ................................................. 22

    B.    TPW Cannot Prove Irreparable Harm. ............................................................. 23

    C.    The Balance Of Hardships Weighs Against An Injunction. ............................. 25

    D.    An Injunction Would Contravene The Public Interest. .................................... 26

V.    Conclusion. ............................................................................................................ 27

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384 (2d Cir. 1995)....................................... 8, 10, 18

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015) ...................................... 8

*Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452 (S.D.N.Y. 2007)............................................... 20

*Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 06-3508-CV, 2007 WL
    2914452 (2d Cir. Oct. 5, 2007)............................................................................................... 24

*Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568 (2d Cir.1981) ............................... 25

*Chelo Pub. Inc. v. Focus Pub. Ltd., No.* 94 CIV. 0123, 1994 WL 391668
    (S.D.N.Y. July 28, 1994) ....................................................................................................... 20

*Citibank N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985).......................................................... 3, 23

*CJ Products LLC v. Snuggly Plushez LLC*, 809 F.Supp.2d 127 (E.D.N.Y. 2011) ......................... 8

*Cline v. 1-888-PLUMBING Grp., Inc.*, 146 F. Supp. 2d 351 (S.D.N.Y. 2001)........................... 18

*Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561 (E.D.N.Y. 1999).................. 14

*Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503 (2d Cir. 1997) ............................................... 8

*Fed. Express Corp. v. Fed. Espresso, Inc.*, 1998 WL 690903 (N.D.N.Y. Sept. 30, 1998) .......... 10

*Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141 (S.D.N.Y. 2011)............ 10

*Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F.Supp.2d 405 (S.D.N.Y. 2000)......... 14

*Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) ............................... 22

*Kusan, Inc. v. Alpha Distributors, Inc.*, 693 F. Supp. 1372 (D. Conn. 1988).............................. 23

*La Cibeles, Inc. v. Adiper, Ltd.*, No. 99CIV.4129, 2000 WL 1253240
    (S.D.N.Y. Sept. 1, 2000)...................................................................................................... 2, 14

*Lang v. Retirement Living Pub. Co.*, 949 F.2d 576 (2d Cir. 1991)................................... 13, 15, 17

*Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278 (S.D.N.Y. 2012).............................. 19

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)................................................................................. 8

*McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126 (2d Cir. 1979) ....................................... 21

*Mgmt. Assistance Inc. v. Edelman*, 584 F. Supp. 1021 (S.D.N.Y. 1984) .................................... 25

*Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575 (S.D.N.Y. 2009).......................... 19

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987)............................... 11

*Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978) ........................... 9, 11

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000)............................................. 14

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ......................................... 8

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ...................................................................... 8, 26

*Savin Corp. v. Savin Grp.*, 391 F.3d 439 (2d Cir. 2004) ............................................................ 18

*Solow Bldg. Co., LLC v. Nine W. Grp., Inc.*, No. 00 CIV 7685, 2001 WL 736794
    (S.D.N.Y. June 29, 2001)....................................................................................................... 18

*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373 (2d Cir. 2005) ........................................... 12, 13

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009).......................... 22

*The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955 (2d Cir. 1996) .................................. 18

*Transcience Corp. v Big Time Toys, LLC*, 50 F. Supp. 3d 441 (S.D.N.Y. 2014).................... 3, 24

*Windsor, Inc. v. Intravco Travel Centers, Inc.*, 799 F. Supp. 1513 (S.D.N.Y. 1992) ................. 21

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................................... 7

**State Cases**

*Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 770 S.E.2d 440 (Va. 2015) ..................................... 23

**Federal Statutes**

15 U.S.C. § 1057(b) ......................................................................................................... 9
15 U.S.C. § 1114 ............................................................................................................... 1

**Other Authorities**

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:32 ............ 10, 22
6 McCarthy § 31:38 ................................................................................................. 24

Defendant Yelp Inc. ("Yelp"), through counsel, hereby opposes the Motion for

Preliminary Injunction filed by Plaintiff TPW Management, LLC ("TPW"). In support of its

Opposition, Yelp relies upon the following Memorandum and the attached Declarations of Peter

Curzon, Brian Osborn, and Kevin Lumpkin.

## MEMORANDUM

### I. Introduction.

TPW's Motion for Preliminary Injunction, like its underlying claim, rests on the faulty

premise that use of a trademarked phrase by a party other than the owner of the mark constitutes

*de facto* infringement, regardless of the mark's weakness, the limited scope of the mark's

registration, or any other circumstances. That is incorrect. Determining infringement requires

consideration of numerous factors, none of which support a finding of infringement here.

Indeed, TPW decidedly fails each of the four prongs of the preliminary injunction test, and offers

nothing to support its arguments except misstatements, inaccuracies, and speculation.[1]

First, TPW does not, and cannot, demonstrate a likelihood of success on the merits of its

underlying claim. To prevail on its trademark infringement claim,[2] TPW must prove that: (1) it

holds a mark entitled to protection under the circumstances of this case (that is, in light of Yelp's

activity); and (2) consumers are likely to be confused by the two companies' uses of the phrase

"We know just the place." TPW can prove neither. TPW's and Yelp's respective uses of that

phrase are so far afield from one another that TPW cannot possibly establish entitlement to

---

[1]     At the outset, the Court should be aware that TPW's Motion may be moot. Yelp's Terms of Service, which TPW has accepted through its CEO, contain a "choice of law and venue" clause that requires actions like this one to be filed in San Francisco County, California. Accordingly, Yelp will shortly be filing a Motion to Transfer, which, if granted, could obviate the need to consider this Motion.

[2]     Although TPW's Complaint contains seven counts, its motion for preliminary injunction only discusses Count I, which alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114. The fact that TPW declines to address the merits of its other six claims in search of preliminary injunctive relief may signal TPW's own recognition of the even more fundamental weaknesses of its other claims.

protection, much less likelihood of confusion. For starters, the parties use the phrase to promote completely different goods and services: TPW uses it to <u>promote their own vacation rentals and property management services</u>; Yelp, by contrast, uses it <u>to encourage use of its local search website and mobile applications, where user-submitted reviews and other consumer information help members of the public select restaurants, doctors, plumbers and other local businesses and services</u>.[3] Because a trademark owner's rights do not extend to goods and services distant from the owner's use of the mark, this disparity alone defeats TPW's claim.

As for likelihood of confusion, none exists. Among other things, both companies use the phrase in connection with their company names and unique logos. It is hornbook trademark law that likelihood of confusion "decreases the more [marks] are used in conjunction with different words, colors, designs, labels, or distinctive logos." *La Cibeles, Inc. v. Adiper, Ltd.*, No. 99CIV.4129, 2000 WL 1253240 at *6 (S.D.N.Y. Sept. 1, 2000). Yelp <u>exclusively</u> uses the tagline "We know just the place" (the "Tagline") in conjunction with its famous and trademarked company name and logo, thereby eliminating any possibility of confusion. Based on TPW's own exhibits in support of its Motion, it appears that TPW does the exact same thing by pairing its mark with its own distinctive name and logo. Because under well settled law this type of pairing vastly diminishes, if not eliminates, likelihood of confusion, TPW's claim will fail for this reason as well. Beyond that, and as discussed below, none of the *Polaroid* factors weigh in favor of confusion either.

Next, TPW cannot establish that it will suffer any, much less irreparable, harm as a result of Yelp's use of its Tagline. As an initial matter, TPW offers no actual evidence that it has been or will be damaged in any way by Yelp's Tagline – because none exists. Moreover, TPW's own

---

[3]     As will be explained further below, Yelp does <u>not</u> book vacation rentals, which is one of many factual errors in TPW's argument.

description of how and when it became aware of Yelp's Tagline confirms the absence of irreparable harm.  Yelp already had been heavily using its Tagline in connection with a widespread, multi-million dollar marketing campaign for nearly <u>two years</u> before TPW noticed.  Even then, TPW became aware of Yelp's Tagline not as a result of any harm or consequence felt by TPW, but by accident, when allegedly a TPW employee (TPW does not reveal who) saw a Yelp commercial while watching television.  Once alerted through this accidental discovery, TPW waited <u>nearly a month</u> before sending Yelp a cease and desist letter, which it only did on the same day this suit was filed.  After that, TPW waited <u>nearly another two months</u> before complaining that it would suffer irreparable harm absent the injunction it seeks here.

TPW's extended failure to notice Yelp's Tagline, followed by its unexplained delay in contacting Yelp, exposes the fallacy of TPW's claim that has suffered or risks any harm.  The Second Circuit takes a decidedly dim view of trademark holders who, like TPW, fail to exercise "due inquiry" in monitoring how and when others are using analogous phrases.  Indeed, our court of appeals has repeatedly found that delays in seeking an injunction – exactly as TPW has delayed here – evidences "<u>a reduced need for such drastic, speedy action</u>," *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985), and "<u>weigh heavily against the movant</u>." *Transcience Corp. v Big Time Toys, LLC*, 50 F. Supp. 3d 441, 457 (S.D.N.Y. 2014) (emphasis added).  Given TPW's lack of diligence in noticing Yelp's widespread marketing campaign, the sheer happenstance of its discovery of Yelp's Tagline, and the sluggish three month delay in requesting this "urgent" relief, TPW's claim of irreparable harm rings hollow.

The third prong of the preliminary injunction test, the balance of hardships, tilts overwhelmingly against an injunction.  Yelp has spent several years and tens of millions of dollars advancing marketing campaigns featuring its Tagline.  Suspending that campaign

throughout Yelp's longstanding, vast marketing operation – which targets several countries and reaches millions of people – would be an undertaking of staggering proportions, to say nothing of the tremendous sunken costs that Yelp would lose. By contrast, TPW puts forth no evidence in its Motion even suggesting, much less clearly demonstrating, that it would suffer any hardship at all in the absence of an injunction.

Finally, the public interest is clearly disserved by the granting of unwarranted injunctions that restrain otherwise legitimate speech and business activities.

For all of these reasons, TPW's Motion must be denied.

## II. Relevant Facts.

Yelp was founded in 2004 to help users find great local businesses like restaurants, auto mechanics, hair stylists, and other service providers. (Curzon Declaration at ¶ 3.) To date, Yelp users have written over 90 million user reviews. (*Id*. at ¶ 4.) Nearly that many unique users visit Yelp on a monthly basis via mobile devices alone. (*Id*. at ¶ 5.) Beginning in 2008, Yelp expanded its service outside of the United States, starting in Canada and expanding to 32 countries as of mid-2015. (*Id*. at ¶ 6.) According to ComScore, a leading internet analytics company, Yelp is one of the 30 most popular Internet properties in the United States. (*Id*. at ¶ 7.)

In 2013, Yelp retained Landor Associates to help it develop a brand engagement program, including a new tagline. (Osborn Declaration at ¶ 3.) After extensive evaluation and research, Landor developed the Tagline that would become the center of Yelp's engagement campaign: "We know just the place." (*Id*.) Prior to adopting the Tagline, Yelp performed a search for existing uses of the Tagline. (*Id*. at ¶ 4.) This search uncovered TPW's mark, but Yelp concluded (correctly, as discussed below) that its use of the phrase was so fundamentally different from TPW's that infringement was not a concern. (*Id*.)

Yelp began using the Tagline to promote its service around December 18, 2013, when the Tagline appeared as the title of a blog post on the eve of Yelp's 10th anniversary.  (*Id*. at ¶ 5.) That blog post featured examples of advertisements using the Tagline.  (*Id*.)  Yelp's Tagline was also featured prominently in Yelp's 10th anniversary celebration, which ran from late 2013 through mid-2014.  (*Id*.)  The celebration culminated on August 6, 2014, with a blog post by Yelp CEO Jeremy Stoppelman entitled "Cheers to 10 Years of Yelp."  (*Id*.)  In 2013-2014, Yelp paid approximately $250,000 to third-party vendors to create and place advertising featuring the Tagline.  (*Id*. at ¶ 6.)

Since 2015, the Tagline has been at the center of a multi-million dollar ad campaign to increase brand awareness.  Yelp spent $14 million in 2015 to develop and air a series of ads featuring the Tagline that depict Yelp users looking for a restaurant, an automotive body shop, a salon, and golf lessons.  (*Id*. at ¶ 7.)  Yelp has budgeted an additional $30 million to develop and air ads featuring the Tagline in 2016.  (*Id*. at ¶ 8.)  Yelp also uses the Tagline in its online advertising, and it has budgeted several million dollars for such advertising in 2016.  (*Id*. at ¶ 9.)

When Yelp uses its Tagline, it always does so in conjunction with its famous, federally registered mark incorporating its company name and "burst" logo.  (*Id*. at ¶ 11.)  That mark looks like this:



(*Id.*)  Yelp applied for federal trademark protection for the Tagline on October 19, 2015. (Lumpkin Declaration at ¶ 3.)  In its application, it described the use of the mark as follows: "Providing consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, restaurants, service providers, events, public services

and government agencies, parks and recreational areas, religious organizations and nonprofit organizations." (*Id.*) That is the same description associated with Yelp's famous mark incorporating its company name and logo. (*Id.* at ¶ 4.)

According to its Complaint, TPW began in the 1990s as a "technical consulting and community management business." (Complaint at ¶ 8.) At some point after that, TPW began to provide "property management, homeowner services, technical consulting, and residential construction services." (*Id.*) In 2012, TPW purchased a company called Mountain Management, Inc. d/b/a/ Wise Vacations, which had been using the phrase "We know just the place" since 2008.[4] (*Id.* at ¶ 23.)

TPW filed a trademark application for the phrase on July 28, 2013. (Lumpkin Declaration at ¶ 5.) In that application, TPW described its use of the mark as follows: "Real estate services, namely, vacation home rental management services." (*Id.*) The mark was registered on March 26, 2013. (*Id.*) TPW uses the mark in connection with its company name and logo to promote its services. (*See* Carroccio Declaration, Exhibit 2.)

According to TPW, on October 4, 2015, a TPW employee noticed a Yelp advertisement on television that featured the Tagline. (Carroccio Declaration at ¶ 31.) This was the first time TPW claims to have become aware of Yelp's Tagline, despite the fact that Yelp had already been using it in commerce to promote its service for nearly two years. TPW did not contact Yelp regarding its concerns over Yelp's tagline until October 25, 2015. (Osborn Declaration at ¶ 10.) On that date, it sent Yelp a cease and desist letter along with a copy of the Complaint in this action. (*See* Carroccio Declaration, Exhibit 10.)

---

[4] TPW offers no details as to where, how, how often, or to what purpose Wise Vacations used the phrase in commerce.

Yelp does not use its Tagline to promote or provide real estate management or rental services.  (Osborn Declaration at ¶ 12.)  Yelp's sole involvement with vacation rentals is that it displays listings for "Vacation Rentals" along with many other categories of accommodations (including "Hotels", "Hostels", "Bed and Breakfast", "Guest Houses", and "Mountain Huts") among the tens of millions of listings across hundreds of categories that Yelp features for local businesses – including several listings for various TPW offices.[5]  For about a year, Yelp partnered with a company called Hipmunk to allow users to book rooms at various accommodations using the Hipmunk platform.  (Curzon Declaration at ¶ 10.)  Yelp has not used the Tagline in connection with its partnership with Hipmunk, and Hipmunk provided its service in connection with its own company name and trademarked logo.  (*Id*. at ¶ 11.)  Yelp has recently ended its association with Hipmunk for reasons unrelated to this litigation.  (*Id*. at ¶ 12.)

## III.    Legal Standard.

A preliminary injunction is a rare and extraordinary remedy that is "never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008).  Rather, "[i]n each case, courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences."  *Id*.  The Second Circuit has established a four-part test to determine whether a movant is entitled to a preliminary injunction:

> A party seeking a preliminary injunction must demonstrate: (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved" by the issuance of an injunction.

---

[5]    TPW seems to ascribe significance to the fact that Yelp maintains listings for its business, but the fact that Yelp has listings for TPW is not surprising, because Yelp has listings for just about every business in the country.  Indeed, anyone can add a listing to Yelp.  (Curzon Declaration at ¶ 13.)

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).

To demonstrate a likelihood of success on an infringement claim, a movant must show, first, that it holds a mark that is entitled to protection under the Lanham Act; and second, that there is a likelihood of confusion between the mark and its use by the alleged infringer. *Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-9 (2d Cir. 1997). The Second Circuit has established a non-exhaustive eight-factor test for likelihood of confusion in trademark cases. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Those factors are: "(1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap'; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995) (citing *Polaroid*, 287 F.2d at 495).

Finally, "[t]he party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear showing,' that the necessary elements are satisfied." *CJ Products LLC v. Snuggly Plushez LLC*, 809 F.Supp.2d 127, 141 (E.D.N.Y. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis added).

**IV.    Discussion.**

   **A.    TPW Fails To Establish A Likelihood Of Success On The Merits.**

TPW fails to establish either of the two requirements to show a likelihood of success on the merits of its infringement claim because: (1) its mark is not entitled to protection against Yelp's use of the Tagline; and (2) there is no possibility, much less a likelihood of confusion between the two.

1.      **TPW's Mark Is Not Entitled To Protection Under The Circumstances Of This Case.**

A mark is not entitled to protection merely because it is registered.  Rather, "even if a mark is registered, the presumption of an exclusive right to use it <u>extends only so far as the goods or services noted in the registration certificate</u>."  *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 48 (2d Cir. 1978); *see also* 15 U.S.C. § 1057(b) (registration of a mark is prima facie evidence of validity "in connection with the goods or services <u>specified in the certificate</u>.") (emphasis added in both).

Here, TPW holds a certificate of registration for the phrase "We know just the place" that specifies that it will be used in connection with "[r]eal estate services, namely, vacation home rental management services."  (Carroccio Declaration, Exhibit 1.)  TPW's mark is registered under International Trademark Class 36, which encompasses "services rendered in financial and monetary affairs and services rendered in relation to insurance contracts of all kinds."[6] (Lumpkin Declaration at ¶ 5.)   TPW's certificate is *prima facie* evidence of validity and protection, but <u>only</u> as to the real estate services described in its certificate.

In contrast, Yelp does not use its Tagline in connection with real estate services.  Its recent application for federal trademark protection of its Tagline reflects this.  Yelp seeks protection of its Tagline for "[p]roviding consumer information, namely, compilations, rankings, ratings, reviews, referrals and recommendations relating to businesses, restaurants, service providers, events, public services and government agencies, parks and recreational areas, religious organizations and nonprofit organizations" under International Trademark Class 35,

---

[6]        *See* Trademark Manual of Examining Procedure § 1401.02(a) (hereinafter "Manual").

encompassing "[a]dvertising; business management; business administration; office functions."[7]

(*Id*. at ¶ 3.)  Plainly, Yelp's use of its Tagline is outside of the narrow scope of protection that TPW's registration provides.

No presumption of protection exists where the holder of a mark seeks to enjoin activity <u>outside</u> of the protected area created by its certificate.  *See., e.g.*, *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 153-54 (S.D.N.Y. 2011) *aff'd*, 508 F. App'x 31 (2d Cir. 2013) (no presumption of protection for holder of mark where mark was registered for "casino games" and allegedly infringing use was in connection with lottery tickets); *Fed. Express Corp. v. Fed. Espresso, Inc.*, 1998 WL 690903 at *10 (N.D.N.Y. Sept. 30, 1998), *aff'd* 201 F.3d 168 (2d Cir. 2000) (Federal Express not entitled to presumption of protection against coffee shop).

In its Motion, TPW relies exclusively on the fact that it has registered its mark to argue that it is valid and entitled to protection.  (Motion at 7-8.)  But because TPW's mark is not registered in the same area for which it seeks protection through this lawsuit (*i.e.*, the area in which Yelp is using the phrase), TPW fails to show that its mark is entitled to protection against Yelp's use of its Tagline, and thus it is not entitled to injunctive relief.

### 2.     There Is No Likelihood Of Confusion.

TPW also fails to establish the second prong of its infringement claim, likelihood of confusion.  As TPW correctly observes, likelihood of confusion is typically evaluated by means of the eight *Polaroid* factors.  *Arrow Fastener*, 59 F.3d at 391.  Although no single *Polaroid* factor is in itself dispositive, "[t]he first three of the 'nonexclusive' *Polaroid* factors are 'perhaps the most significant in determining the likelihood of confusion.'"  4 J. Thomas McCarthy,

---

[7]     Manual § 1401.02(a).

McCarthy on Trademarks and Unfair Competition § 24:32 (quoting *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)).

In this case, all eight *Polaroid* factors weigh against likelihood of confusion, particularly the three most important factors. However, because the *Polaroid* factors are non-exhaustive and must be considered in light of the totality of the circumstances, *Mushroom Makers*, 580 F.2d at 47, it is worth taking a moment to consider some of the broader reasons why it is highly unlikely that consumers will be confused by Yelp's use of its Tagline.

First, both TPW and Yelp closely pair the phrase with their respective company names and logos: Yelp exclusively uses its Tagline in connection with its famous and trademarked company name and logo, while TPW primarily uses its mark in connection with its trademarked logo featuring an arched Palladian window.[8] (*See, e.g.*, Carroccio Declaration, Exhibit 2; Lumpkin Declaration at ¶ 6.) Typical examples of what consumers will see from both companies are as follows:[9]

 

These pairing practices dramatically reduce the risk of confusion in the mind of the consumer, because when consumers see the phrase "We know just the place" just below the name and logo of the company using the phrase, they receive a clear visual indication of the source of the services being advertised.

---

[8] The fact that both Yelp and TPW pair the phrase with their own more distinctive logos also weighs against the strength of TPW's mark. *See infra* at pp. 12-13.

[9] *See* Yelp, We Know Just The Place :30 (May 7, 2015) at 0:28, http://youtu.be/29De_54-SBs?t=28s; TPW Vacation Rentals, http://www.tpwvacations.com.

Second, TPW and Yelp use the phrase for completely different purposes. TPW uses it to promote its property management and vacation rental services, whereas Yelp uses it to promote its local search service that allows consumers to compare reviews for all kinds of local businesses. Because the two companies use the phrase to promote very different services, there is no proximity between the companies' uses and therefore no likelihood that consumers will be confused. Indeed, this lack of proximity likely explains why TPW failed to even notice Yelp's use of the phrase in commerce for nearly two years.

Finally, not only does Yelp not use its Tagline to promote vacation rentals or management, but Yelp does not provide vacation rental or management services <u>at all</u>. Rather, for about a year it allowed its users to access the booking services of a completely different internet company, Hipmunk. Even then, the bookings were generally hotel rooms, not vacation rentals. Importantly, <u>neither Yelp nor Hipmunk used the Tagline in connection with Hipmunk's booking services</u>. Rather, Hipmunk used its own marks and logos in connection with its hotel-booking service.

Taken together, these facts strongly suggest there is no likelihood that ordinary, reasonable consumers will confuse Yelp's marketing materials with TPW's when encountering the phrase "We know just the place." Consideration of each of the *Polaroid* factors, immediately below, confirms this.

### a. TPW's Mark Is Not Strong.

The first *Polaroid* factor – strength of mark – weighs decidedly against confusion. Despite TPW's claims to the contrary, its mark is not strong. Marks are classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384-85 (2d Cir. 2005). Within this spectrum,

TPW's mark is at most suggestive, because it 'suggests' something about TPW's services.[10] *Id.* at 385. Although suggestive marks are entitled to <u>registration</u> without proof of secondary meaning, such registration is "not necessarily dispositive of the issue of the strength of the mark." *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 581 (2d Cir. 1991). Indeed, "[i]n the absence of any showing of secondary meaning, suggestive marks are <u>at best</u> moderately strong." *Star Indus.*, 412 F.3d at 385 (emphasis added).

Here, TPW does not, and cannot, argue that its mark has acquired a secondary meaning in the marketplace.[11] Without a showing of secondary meaning, "the strength of the mark turns on its 'origin-indicating' quality, in the eyes of the purchasing public." *Lang*, 949 F.2d at 581 (internal quotation omitted). Nothing about the phrase "We know just the place" gives consumers any indication as to its origin, and TPW has offered no evidence to suggest that it does. Rather, it is an unremarkable, commonly used, grammatically simple English language sentence that could be associated with any number of companies offering a wide range of services. Indeed, it is probably <u>because</u> the phrase is inherently not a strong mark that both Yelp and TPW use the phrase in connection with their company names and logos.

> **b.** **TPW's Mark And Yelp's Tagline Are Not Legally Similar.**

The second *Polaroid* factor – similarity – also weighs against confusion. Despite being the same phrase in the conventional sense, TPW's mark and Yelp's Tagline are not "similar" as

---

[10]     TPW proclaims, without any support, that its mark is "at least suggestive," thus implying that TPW believes its mark to fall into the stronger "arbitrary or fanciful" category. (Motion at 10.) This is incorrect. Arbitrary or fanciful marks are ones "that do not communicate any information about the product either directly or by suggestion." *Star Indus.*, 413 F.3d at 485. The phrase "We know just the place" obviously communicates information about TPW's real estate services – namely, that it knows "just the place" to satisfy its clients' real estate goals. Thus, it is neither arbitrary nor fanciful.

[11]     Instead, TPW argues that "[a] suggestive mark, does not depend upon a showing of secondary meaning to entitle it to trademark protection." (Motion at 10.) Not only does this argument effectively concede that TPW's mark has no secondary meaning in the marketplace, but it also improperly conflates the requirements for trademark <u>registration</u> with those for trademark <u>strength</u>.

that term of art is defined in trademark law: "[I]n determining whether two marks are confusingly similar, we must appraise the overall impression created by the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000) (internal quotation omitted); *see also Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F.Supp.2d 405, 410-411 (S.D.N.Y. 2000) ("[S]imilarity is weighed in light of whether (1) the marks appear in connection with other identifying information, and (2) the total effect of the designation.").

In this case, because consumers see Yelp's Tagline alongside the name "Yelp" and its famous burst logo, it is difficult to imagine how a customer could possibly associate the phrase with anything but Yelp when Yelp uses it – particularly because Yelp is a highly visible and readily identifiable brand. *See Greenpoint*, 116 F.Supp.2d at 411 ("Where a similar mark is used in conjunction with a company name, the likelihood of confusion is lessened."); *La Cibeles*, 2000 WL 1253240 at *6 ("The likelihood of confusion between the plaintiff's and the defendant's marks decreases the more that they are used in conjunction with different words, colors, designs, labels, or distinctive logos."); *Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 569 (E.D.N.Y. 1999) (finding no likelihood of confusion between trade dresses for artificial sweetener products where each was presented in conjunction with a "well-known logo and product name"). By the same token, consumers who see TPW's mark used in connection with TPW's name and window logo will logically associate the phrase with TPW.

In sum, because both Yelp and TPW use the phrase in connection with their own company names and logos, their uses of the phrase are not "similar" in the trademark sense, and so this factor weighs against confusion.

### c.      TPW's Mark And Yelp's Tagline Are Not Used In Proximity To Each Other.

The third *Polaroid* factor – proximity – also reveals a wide gap between the two companies' uses of the phrase, further showing that confusion is highly unlikely. Proximity "focuses on whether the two products compete with each other. To the extent goods (or trade names) serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion." *Lang*, 949 F.2d at 582. Because there is no overlap between the way in which the two companies use the phrase, there is no likelihood that consumers will be confused when they see it in either context.

In an attempt to give the impression of proximity where none exists, TPW advances several specious arguments.

First, TPW argues that it uses the phrase to advertise and allow users to book vacation rental properties (Carroccio Declaration at ¶ 13) and insists that this somehow overlaps with Yelp's use of its Tagline. That is incorrect. Yelp does not use the Tagline in connection with vacation rental booking services. In fact, it has never offered such services. Instead, Yelp uses its Tagline to promote its highly popular local search services, which allows consumers to find and review everything from restaurants to auto repair shops to post offices. Because Yelp does not use its Tagline to advertise or allow users to book vacation rental properties, there is no competition between the services that Yelp and TPW provide, and thus no proximity.

Second, TPW cites several exhibits attached to Mr. Carroccio's declaration that it claims suggest Yelp is using its Tagline to advertise and book vacation rentals. A review of those exhibits, however, reveals that is not correct either. For example, TPW's Exhibit 14 purports to show Yelp using the phrase "to attract the same potential customers as TPW for rental properties that TPW would offer." (Carroccio Declaration at ¶ 40.) That exhibit shows the results of a

Google search for "we know just the place okemo." TPW's real estate home page is the first

search result. The next results are two YouTube videos of Yelp advertisements that are <u>missing</u>

<u>the term Okemo</u>.[12] In fact, the search results contained in Exhibit 14 clearly inform users of that

fact, as just below both Yelp videos is the following disclaimer: "Missing: ~~okemo~~". This pattern

repeats itself in the search results for Stratton, Mount Snow, and Killington. In each instance, the

Yelp pages appearing in the search results do not contain the critical search term – the name of

the specific ski resort – that would supposedly show TPW and Yelp competing with each other.

In this manner, Exhibit 14 undercuts rather than supports TPW's arguments.

Exhibit 14a is similarly misguided. That exhibit contains Yelp listings for hotels in

towns such as Manchester and Killington, but none of the properties listed on Yelp's website are

also listed on TPW's site. TPW appears to suggest that Yelp must necessarily be in competition

with TPW merely because Yelp lists businesses in the same towns where TPW operates. This

suggestion is plainly incorrect. If it were true, it would mean that Yelp is effectively directly

competing with every single business in the country given that Yelp displays listings for

businesses in virtually every city and town in the United States. Further, none of the Yelp

listings in Exhibit 14a contain the Tagline. Thus, even if TPW's argument that this geographic

overlap is equivalent to competition were true (which it is not), that overlap does not involve the

phrase at issue in this suit.

Indeed, despite its protestations that Yelp and TPW are operating in proximity to one

another in the marketplace, TPW identifies only one property that appears on both TPW and

Yelp websites: the Long Trail House. There are two reasons why this does not reflect direct

---

[12] The fact that Yelp's advertisements appear in the search results *despite* not containing the term "Okemo" is simply a reflection of the strength of Yelp's Tagline. Given Yelp's widespread fame, and the fact that it has been using the Tagline to advertise its service for more than two years, it is unsurprising that Yelp's advertisements would appear toward the top of the search results for a search containing the phrase "We know just the place."

competition.  First, the Long Trail House listing on Yelp's website clearly indicates that the booking feature is "powered by Hipmunk," not Yelp.  (Carroccio Declaration, Exhibit 15 (emphasis added.))  Further clarifying this, Hipmunk's name and its federally registered "chipmunk" logo are prominently featured above and below the space where users can book a room.  (*Id*.; Lumpkin Declaration at ¶ 7.)[13]  Second, the Tagline does not appear anywhere in Hipmunk's listing for the Long Trail House, just as it did not for any of the properties listed in Exhibit 14a.[14]  For these reasons, this example is not persuasive evidence of proximity.

Further weighing against a finding of proximity, TPW also fails to show that Yelp uses the phrase "We know just the place" to promote vacation rentals anywhere.  Rather, Yelp uses the phrase to encourage users to visit its website and utilize its wealth of user-submitted reviews, photos, and other information to find the best place to dine, get their teeth cleaned, buy a car, or engage in any other kind of consumer activity.  For example, Yelp's recent television advertisement featuring the Tagline showcases users' ability to find restaurants, auto repair, hair and makeup, and golf lessons using Yelp.  *See* Yelp TV Commercial 2015 (May 7, 2015), http://youtu.be/pAXPY2dBq9I.  Another of Yelp's advertisements shows a Yelp user frequenting an "ocean beach" recommended by another user's review.  *See* Yelp, We Know Just The Place – Beach (Dec. 4, 2013), http://youtu.be/UWSuGakTLtM.  In neither of those advertisements – or any other use of the phrase – does Yelp use the Tagline to promote the

---

[13]     Just as consumers are less likely to be confused when they see "We know just the place" associated with either the Yelp or TPW names and logos, they are likely to associate the booking feature with Hipmunk when they see the Hipmunk name and logo.

[14]     TPW's unsupported assertion that "Yelp uses the TPW mark in its online booking through Hipmunk" is flatly wrong, and contradicted by its own exhibits.  (Motion at 14.)

booking of vacation rentals through Yelp.[15]

In sum, TPW has offered no evidence to suggest that Yelp uses its Tagline in proximity to TPW's business or its use of its mark. Indeed, the lack of proximity between the two companies likely explains why TPW did not notice Yelp's use of the phrase for nearly two years, and even then only when an employee happened to see one of Yelp's advertisements featuring the Tagline on television. (Carroccio Declaration at ¶ 31.)

Ample case law illustrates how lack of proximity correlates with the absence of confusion. *See, e.g.*, *Arrow Fastener*, 59 F.3d at 396 (no proximity between two "functionally different" staplers sold in the same store); *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459 (2d Cir. 2004) (no proximity between "plaintiff's back office facilities management services and defendants' professional engineering services."); *Solow Bldg. Co., LLC v. Nine W. Grp., Inc.*, No. 00 CIV. 7685, 2001 WL 736794 at *6 (S.D.N.Y. June 29, 2001) (no likelihood of confusion where "there is clearly no proximity between the parties' businesses or their products, and there is simply no competition between the parties."). Given the lack of proximity between TPW's and Yelp's use of the same phrase, there is no likelihood of confusion here either.

### d. TPW Offers No Evidence Suggesting It Will "Bridge The Gap."

Turning now to the lesser *Polaroid* factors, the fourth factor – bridging the gap – is of no benefit to TPW. This factor only weighs in favor of confusion "if either bridging the gap is probable or if an average consumer perceives it as a probability." *Cline v. 1-888-PLUMBING Grp., Inc.*, 146 F. Supp. 2d 351, 367 (S.D.N.Y. 2001) (citing *The Sports Auth., Inc. v. Prime*

---

[15] TPW's argument that Yelp's "ocean beach" commercial shows that Yelp is using the phrase to "advertise vacation destinations" in competition with TPW falls flat. (*See* Carroccio Declaration at ¶ 43.) Although Vermonters might instinctively associate beaches with vacations, there is an obvious difference between allowing users to find a good <u>beach</u> (which Yelp does) and allowing them to book ski vacation rentals (which Yelp does not).

*Hosp. Corp.*, 89 F.3d 955, 963 (2d Cir. 1996)).[16]  Moreover, "[a] speculative intention is insufficient to demonstrate that bridging the gap is likely; a litigant should provide evidence of a concrete expansion plan."  *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 295 (S.D.N.Y. 2012); *see also Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 588 (S.D.N.Y. 2009) ("vague assertions" that company had "discussed entry" into new field were insufficient proof that company would bridge the gap).

TPW offers no actual evidence suggesting it will "bridge the gap" between its business area and Yelp's.  All TPW offers is the conclusory assertion that it might, at some unspecified time in the future, implement a user-rating system – one of the features of Yelp's services.  Mr. Carroccio declares:

> TPW has the ability to rate customer comments and offer customer ratings for various services provided by service providers through its work order system. TPW was planning to initiate this feature which would be similar to the ratings offered by Yelp.

(Carroccio Declaration at ¶ 51.)  This bare statement is too speculative to constitute evidence of anything, much less a "clear showing" that TPW has any plans to try to bridge the gap to Yelp's business area.[17]  Having "the ability" to do something is not the same as actually planning to do it, and Mr. Carroccio's unsupported claim that TPW plans to move into the area of user ratings does not make it true.

TPW's evidence on this factor is not just insufficient, but non-existent.

---

[16]     Here, the average consumer would not perceive it as probable that TPW would begin to provide a platform for users to rate and comment on local businesses around the country and the world.  Even assuming that the average consumer is aware of TPW's existence, TPW's current services do not suggest that it might soon introduce such a platform.

[17]     TPW also briefly argues that there is no gap to bridge between the two companies.  (Motion at 15.)  But even putting aside the obvious implausibility of that statement, Yelp has exhaustively demonstrated above that there is no proximity between TPW and Yelp, either generally or with respect to Yelp's use of its Tagline.  *See supra* pp. 14-18.

### e. TPW Offers No Evidence Of Actual Confusion.

The fifth *Polaroid* factor – actual confusion – is of no help to TPW either.  As with the preceding factor, TPW's so-called "evidence" of actual confusion is so vague and unsupported as to be useless.  Mr. Carroccio declares that "[a]fter seeing Yelp's use of the TPW Mark, a TPW customer commented that he was confused about the association between Yelp and TPW." (Carroccio Declaration at ¶ 50.)  What customer?  What did he or she see?  When did he or she see it?  What did he or she say?  When?  To whom?  Without providing answers to these questions, TPW has not offered any evidence – much less a clear showing – to support a claim of actual confusion.

Courts in this circuit have repeatedly rejected conclusory claims of confusion like TPW's here.  *See, e.g.*, *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 465 (S.D.N.Y. 2007) ("Plaintiffs' conclusory statements that consumers are confused do not prove actual confusion, and plaintiffs have cited no credible instances of actual confusion."); *Chelo Pub. Inc. v. Focus Pub. Ltd.*, No. 94 CIV. 0123, 1994 WL 391668, at *5 (S.D.N.Y. July 28, 1994) ("Plaintiff alleges that its office has received several inquiries regarding whether Fitness Plus is associated with plaintiff. These general allegations lack specificity and fail to convince the court that any actual confusion has occurred.").

### f. TPW's And Yelp's Consumers Are Sophisticated.

In addressing the sixth *Polaroid* factor – customer sophistication – TPW fails to discuss indicia of "sophistication" in its customer base at all.  Instead, it sidesteps the issue, merely asserting that Yelp and TPW seek to attract the same customers.  That point is disputed elsewhere.  *See supra* at pp. 14-18 (discussing lack of direct competition between TPW and

Yelp).  With respect to <u>sophistication</u>, TPW once again fails to support its discussion of this factor with any actual evidence, much less the "clear" evidence needed to support an injunction.

Even if TPW were to address sophistication head-on, it would weigh in Yelp's favor because both Yelp's and TPW's consumers are unquestioningly sophisticated.  "[C]onsumers who, on average, are affluent and well-educated" are "quite sophisticated." *Windsor, Inc. v. Intravco Travel Centers, Inc.*, 799 F. Supp. 1513, 1526 (S.D.N.Y. 1992).  Here, Yelp's users are predominantly both.  27.3% of Yelp users earn between $60,000 and $99,000 annually, and 38.6% earn more than $100,000 annually.  (Curzon Declaration at ¶ 9.)  Further, almost 80% of Yelp users have at least a college education.  (Curzon Declaration at ¶ 8.)  These traits, especially when combined with the fact that consumers who use Yelp are likely to be technologically savvy, show that Yelp has a very sophisticated user base.

TPW's users are likely to be at least as sophisticated as Yelp's, if not more so.  Although TPW provides no information about its consumer base, it is not unreasonable to conclude that consumers buying more expensive products and services, like ski resort rentals, are generally more likely to be sophisticated.  *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979) ("The greater the value of an article the more careful the typical consumer can be expected to be.").  Just a cursory glance at its website reveals that it deals in high-end vacation rentals.  *See generally* TPW Vacation Rentals, http://www.tpwvacations.com.  Given the price of the services that TPW offers, its consumers are likely to be highly sophisticated.[18]

Because both Yelp and TPW have sophisticated customer bases, this factor weighs against confusion as well.

---

[18]    In an attempt to show that its customers are not sophisticated, TPW argues only that they are "likely not real estate professionals," but does not offer any other information about its customer base.  But one does not need to be a real estate professional to be a sophisticated consumer capable of telling the difference between Yelp's use of the Tagline and TPW's use of its mark.

### g.     TPW Offers No Evidence Of Bad Faith.

As for the seventh *Polaroid* factor, TPW has produced no evidence whatsoever that Yelp has acted in bad faith.  Moreover, TPW's argument as to this factor is contradictory.  In one breath, it argues that "[t]his factor does not influence whether consumers will be confused," but in the next it argues that it "should weigh in favor of the Court finding confusion regarding the TPW Mark."  Motion at 17.  Either way, TPW puts forth no evidence – much less the requisite clear showing – that Yelp has acted in bad faith.

To the contrary, Yelp has at all times acted in good faith in developing and using its Tagline.  It is true that Yelp was aware of TPW's mark when it began its advertising campaign featuring the phrase – Yelp performed a search for existing uses of the Tagline before its first use.  Yelp made a careful, well-informed and good faith determination that its use of the phrase was utterly different than TPW's, and thus no infringement would occur.  And none has.

### h.     Yelp's Service Is High Quality.

The final *Polaroid* factor – quality of service – weighs against confusion as well.  "Generally, quality is weighed as a factor when there is an allegation that a low quality product is taking unfair advantage of the public good will earned by a well-established high quality product."  *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1079 (2d Cir. 1993).[19]  Clearly that is not the case here, as there can be no serious dispute that Yelp offers a high-quality service.  It is one of the top rated websites in the United States (and the world), operates in 32

---

[19]     TPW briefly argues in its Motion that there may be a likelihood of confusion even if Yelp's service is of high quality.  But this argument simply does not make sense.  If it does not matter the quality of the alleged infringer's service, how could this factor ever weigh against a likelihood of confusion?  Perhaps that is why the Second Circuit has "cast doubt on the usefulness of this factor in future cases."  McCarthy § 24:32 (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009)).

countries, and has over 100 million unique visitors per month. Because Yelp's service is high quality, this factor is at least neutral, if not suggestive of no confusion.

In a strained attempt to suggest otherwise, TPW contends Yelp has a "credibility problem." In support of that assertion, TPW cites one CNET article from almost <u>seven years</u> ago and a Wall Street Journal article from about <u>two years</u> ago.[20] These two outdated articles do not constitute competent evidence suggesting Yelp has a credibility problem such that its use of the phrase is damaging TPW's reputation.

In sum, none of the eight *Polaroid* factors indicate any likelihood of confusion in the minds of consumers as to the source of the services offered when Yelp uses its Tagline. As a result, TPW will not prevail on the merits of its infringement claim, and is not entitled to a preliminary injunction.

### B. TPW Cannot Prove Irreparable Harm.

TPW's attempt to argue that it will suffer irreparable harm in the absence of an injunction is even less persuasive than its arguments concerning infringement. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A.*, 756 F.2d at 276. "The rationale for this rule is obvious: if an aggrieved party rests on his rights, it is incongruous for him to ask a court to act swiftly and issue an injunction without which irreparable harm will result." *Kusan, Inc. v. Alpha Distributors, Inc.*, 693 F. Supp. 1372, 1374 (D. Conn. 1988)

---

[20] The Wall Street Journal article is behind a "pay wall," meaning that users must subscribe to the Journal in order to read it. But from the little information available in the public view of the article, it is about a defamation lawsuit in Virginia in which businesses sought to subpoena Yelp to obtain the identities of users who gave them poor reviews. Yelp opposed the subpoena but was not a party in the case, and the article does not discuss Yelp's credibility or the quality of its service. Yelp prevailed in the case last year and avoided divulging its users' personal information. *See Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 770 S.E.2d 440 (Va. 2015).

(discussing *Citibank*); *see also Transcience Corp.*, 50 F. Supp. 3d at 457 ("It is well-established in this Circuit that delays in moving for injunctive relief to protect copyrights and trademarks from further unauthorized use weigh heavily against the movant.").

Under the foregoing Second Circuit precedent, TPW's repeated delays are fatal to its claim of irreparable harm. TPW waited nearly two years after the first instance of Yelp's use of the Tagline before it lifted a finger to stop it. Once it became aware of Yelp's Tagline – accidentally, and not as a result of policing its mark or feeling any ill effects from Yelp's use of its Tagline – it waited another 25 days to send a cease and desist letter to Yelp. And even then, it only did so simultaneous with filing its Complaint. After that, it waited almost another two months to seek an injunction. To put it mildly, TPW has not acted with a sense of urgency reflective of irreparable harm. If TPW truly feared suffering irreparable harm at the hands of Yelp upon its October 4, 2015 discovery of the Tagline, one would imagine it would have taken less than 25 days to send Yelp a two-page cease and desist letter.

TPW's failure to notice Yelp's Tagline for nearly two years is evidence of three things. First, it shows that the services that Yelp and TPW provide are not in proximity to each other. Second, it shows Yelp's use of its Tagline has not caused TPW irreparable harm, because TPW did not even *notice* that use, much less experience harm as a result of it. Third, it shows TPW failed to appropriately monitor and police its mark as it is required to do. *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 06-3508-CV, 2007 WL 2914452 at *3 (2d Cir. Oct. 5, 2007) ("A trademark owner is chargeable with such knowledge as he might have obtained upon due inquiry.") (internal quotation omitted); 6 McCarthy § 31:38 (the law "imposes on a trademark owner the duty to police its rights against infringers.").

Because TPW has waited so long to seek injunctive relief against Yelp's alleged "infringement," it has not demonstrated any irreparable harm worthy of extraordinary and urgent action by this Court.

### C.    The Balance Of Hardships Weighs Against An Injunction.

The balance of hardships also weighs decidedly against any injunction.  Here, TPW must show that "the harm it would suffer without the relief sought is decidedly greater than the harm its opponent would suffer if injunctive relief was granted."  *Mgmt. Assistance Inc. v. Edelman*, 584 F. Supp. 1021, 1025 (S.D.N.Y. 1984) (citing *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981)).  TPW fails to make such a showing.

If this Court were to grant the injunction that TPW seeks, it would force Yelp to suspend use of its Tagline throughout its vast international marketing network.  Yelp has invested millions of dollars in advertising to develop and promote its Tagline between 2013 and 2015, and has committed to spend tens of millions of more dollars on advertising in 2016 that will feature the Tagline.  Additionally, Yelp has budgeted several million dollars to other forms of advertising, some of which will feature the Tagline.  An injunction would cause Yelp to lose the significant investment that it has already committed to the campaign, and deprive Yelp of what it expects to be a successful and lucrative endeavor.

In contrast, TPW offers no actual evidence that it would suffer hardship in the absence of an injunction.  TPW claims, without any support or specific information, that the balance of hardships weighs in its favor because it has "invested a substantial share of its resources to developing its reputation, the TPW Mark and its good will." (Motion at 22.)  Once again, TPW produces no evidence to support this assertion.  For example, Mr. Carroccio avers that "TPW has made a significant financial investment in its online marketing and booking platform which

features the TPW Mark." (Carroccio Declaration at ¶ 15.) How much of an investment did TPW make and how much related specifically to the TPW Mark? When? How successful has that investment in the TPW Mark been in attracting and retaining customers? Mr. Carroccio does not offer any, much less sufficient, evidence to show TPW would suffer hardship if the Court denies its request for an injunction.

As a result, the balance of hardships does not tip in TPW's favor.

**D.     An Injunction Would Contravene The Public Interest.**

Finally, the public interest would clearly be disserved by granting TPW an injunction. TPW generically states that "the public interest is served by preventing confusion." (Motion at 23.) True, but as discussed above, there is no confusion here. Rather, the public's interest in this case lies in ensuring that trademark rights are not read too broadly, and that companies and individuals are not deterred from engaging in legitimate, good faith, constitutionally protected marketing speech to promote their products and services. *See Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) ("Every injunction issued before a final adjudication on the merits risks enjoining speech protected by the First Amendment.") (discussing copyright infringement).

In addition, the public interest would also be disserved by allowing owners of intellectual property to sleep on their rights as TPW has done here. TPW failed to police its mark for nearly two years, and then waited nearly a month after discovering Yelp's Tagline to contact Yelp and voice any concerns. Now TPW seeks injunctive relief on a threadbare factual record, fraught with inaccuracies and conjecture, none of which supports any grant of relief. Granting TPW's request for an injunction here would embolden trademark holders to hold businesses and individuals hostage through frivolous lawsuits despite their own failure to produce any actual

evidence of infringement or even police their marks.  Such a result is inconsistent with the public interest.

**V.      Conclusion.**

For the foregoing reasons, Yelp respectfully requests that this Court deny TPW's Motion for Preliminary Injunction.

Dated at Burlington, Vermont this 29th day of January, 2016.

Respectfully submitted,

YELP INC.

/s/ Ian P. Carleton
Ian P. Carleton, Esq.
Kevin A. Lumpkin, Esq.
Sheehey Furlong & Behm P.C.
30 Main St., Gateway Sq., 6th Floor
PO Box 66
Burlington, VT  05402-0066
Telephone:  (802) 864-9891
Facsimile: (802) 864-6815
icarleton@sheeheyvt.com
klumpkin@sheeheyvt.com

## CERTIFICATE OF SERVICE

I, Ian P. Carleton, counsel for Yelp Inc., do hereby certify that on January 29, 2016, I filed with the Clerk of Court the following document using the CM/ECF system:

### DEFENDANT YELP INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Christopher S. Ruhland, Esq.
William W. Oxley, Esq.
Dechert LLP
633 West 5th Street, 37th Floor
Los Angeles, CA 90071

E. William Leckerling, III, Esq.
Lisman Leckerling, P.C.
84 Pine Street, 5th Floor
P.O. Box 728
Burlington, VT 05402-0728
wmleckerling@lisman.com

Dated at Burlington, Vermont, this 29th day of January, 2016.

YELP INC.

*/s/ Ian P. Carleton*
Ian P. Carleton, Esq.
Kevin A. Lumpkin, Esq.
Sheehey Furlong & Behm P.C.
30 Main St., Gateway Sq., 6th Floor
PO Box 66
Burlington, VT 05402-0066
Telephone: (802) 864-9891
Facsimile: (802) 864-6815
icarleton@sheeheyvt.com
klumpkin@sheeheyvt.com